```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
UNITED STATES OF AMERICA,                      :
                                               :
              v.                               :      MEMORANDUM & ORDER
                                               :      17-CR-608 (WFK)
ALI GILL,                                      :
                                               :
                      Defendant.               :
----------------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge:**

On November 17, 2017, Ali Gill ("Defendant") pled guilty to one count of wire fraud in violation of 18 U.S.C. § 1343. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 33 months of incarceration, 2 years of supervised release, an order of restitution in the amount of $1,085,013.24, and payment of a $100.00 special assessment.

## BACKGROUND

On November 17, 2017, the United States filed an Information charging Defendant with six counts of wire fraud. ECF No. 16. That same day, Defendant pled guilty before this Court, pursuant to a plea agreement, to Count One of the Information charging wire fraud in violation of 18 U.S.C. § 1343. *See* Plea Agreement, ECF No. 19. Count One charged that Defendant, together with others, did knowingly and intentionally devise a scheme and artifice to defraud pharmaceutical drug manufacturers, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, transmitted and caused to be transmitted by means of wire communication in interstate commerce, a false claim for reimbursement on October 24, 2015, for a false Janumet prescription (#6986407), originating in New York, and received in Georgia, in violation of 18 U.S.C. § 1343.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

**I.  Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the United States Sentencing Commission Guidelines Manual (the "Guidelines" or "Sentencing Guidelines") range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal quotation marks and citation omitted). Section 3553(a) provides a set of seven factors for the court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

**II.  Analysis**

  **A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on August 2, 1978 in Pakistan and was raised under low income, "poverty-like" circumstances. Presentence Investigation Report ("PSR") ¶¶ 50, 52, ECF No. 29.

At the age of five, Defendant and his family immigrated to Ohio, and at the age of eight, Defendant moved to the New York City area, where he remains to date. *Id.* ¶ 52. His father is a retired taxi driver and resides in Brooklyn. *Id.* ¶ 50. Defendant reported a close relationship with his father, who remains supportive. *Id.* Defendant's mother passed away in 2011. *Id.* Defendant also has two siblings, both of whom reside with their father in Brooklyn and are employed. *Id.* ¶ 51. Defendant's siblings are unaware of his conviction in this case. *Id.*

Despite the modest conditions, Defendant was provided with all his basic necessities, and his upbringing was free from any abuse. *Id.* ¶ 52. The Defendant worked part-time while he was attending high school to contribute financially to the household. *Id.* Defendant became a naturalized United States citizen on September 4, 1991. *Id.*

Defendant married Daisy Medrano in 2015, but they divorced in December 2017, due to the stress of Defendant's participation in the instant offense. *Id.* ¶ 53. The marriage produced two children, ages four and two at the time of the PSR. Defendant and his former spouse continue to reside together in their home located in Staten Island, New York and maintain an amicable relationship. *Id.* Ms. Medrano relayed to Probation that she requested the divorce subsequent to experiencing shock and disappointment with regards to Defendant's participation in the instant offense. *Id.* ¶ 54. However, Ms. Medrano noted that she "wants to make the marriage work for her children." *Id.*

Defendant was diagnosed with asthma and utilizes an inhaler. *Id.* ¶ 57. While attending college, Defendant was prescribed attention-deficit/hyperactivity disorder medication. *Id.* ¶ 58. He continues to take the medication sporadically, and the last time was one day before the presentence interview for the instant offense. *Id.* Defendant reported no history of illicit drug use; he consumes alcohol, but not in excess. *Id.* ¶ 59.

3

Defendant's highest level of education is a doctoral degree in pharmaceutical sciences from Long Island University in Brookville, New York. *Id.* ¶ 61. Currently, Defendant holds an active pharmacist license, which expires on July 31, 2019. *Id.* ¶ 62. Defendant has been unemployed since January 2017 and is financially supported through his savings and his former spouse. *Id.* ¶ 63. His employment history includes his most recent position in relation to the instant offense, as a pharmacist at a Stop-N-Shop grocery store; as a driver for a limousine company; and as an administrative assistant at New York University (NYU). *Id.* ¶¶ 63-68.

Defendant has one prior criminal conviction. On January 21, 2004, at the age of twenty-five, subsequent to his termination as an administrative assistant in the dermatology department at NYU Medical Center, Defendant fraudulently used the department's account number to purchase items valued at $31,032 from the NYU bookstore; the purchases were ultimately billed to the dermatology department. *Id.* ¶ 44. On March 3, 2006, Defendant was convicted of one count of petit larceny and one count of possession of a forged instrument in the third degree in New York County Supreme Court. *Id.* He was sentenced to conditional discharge and placed on probation. *Id.* He was discharged from probation on July 29, 2008. *Id.*

With respect to the instant offense of conviction, from approximately October 2015 through December 21, 2016, Defendant, while working in the Stop-N-Shop pharmacy in Brooklyn, submitted 3,266 false claims for reimbursement to pharmaceutical manufacturers using manufacturer's coupons. PSR ¶ 22; Gov't Mem. at 2, ECF No. 32. Defendant used false prescriptions that he fabricated by identifying fictitious patients on the prescriptions. Gov't Mem. at 2. To avoid detection, Defendant bypassed the pharmacy's electronic pin-pad device, which would have required the patients' signature. *Id.* Defendant then stole the pharmaceutical drugs, which corresponded to the false prescriptions and related claims from the pharmacy. *Id.*

4

Defendant removed the pharmaceutical drugs from the Brooklyn pharmacy in order to sell them to another pharmacy in New York. *See* PSR ¶ 28; Gov't Mem. at 2. Through the fraudulent scheme, Defendant caused the pharmaceutical drug manufacturers a total loss of approximately $1.085 million, which they paid out on the fraudulent claims submitted by Defendant using the coupons for the fictitious patients that Defendant created. PSR ¶¶ 27, 29; Gov't Mem. at 2.

The Government advises that prior to Defendant's May 2017 self-surrender at the FBI's New York Office, Defendant, with counsel present, attempted to cooperate with the Government. Gov't Mem. at 2. Defendant met with the Government on several occasions over a period of approximately four months and provided information regarding his scheme. *Id.* During the period that Defendant was proffering with the Government, however, Defendant made financial transactions with an individual who was a subject of the investigation. *Id.* The Government first learned of these transactions from a source other than Defendant, who when confronted confirmed that he had made them. *Id.* As a result, the Government did not offer a cooperation agreement to Defendant, and he pleaded guilty on November 17, 2017, pursuant to a plea agreement. *Id.* at 2-3.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence punishes Defendant for violating federal law and is crafted to deter him and others from engaging in similar criminal activity in the future. The Court takes into account Defendant's criminal history as well as his family support.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to Count One of the Information in violation of 18 U.S.C. § 1343. For Count One, he faces a maximum term of imprisonment of twenty years. 18 U.S.C. § 1343. He also faces: up to three years of supervised release, 18 U.S.C. § 3583(b)(2); not less than one and no more than five years of probation, 18 U.S.C. § 3561(c)(1); fine of $250,000 or twice the gross gain or loss, whichever is greater, 18 U.S.C. §§ 1343, 3571(b)(3), (d); restitution, 18 U.S.C. § 3663A; and a mandatory special assessment of $100.00 per count, 18 U.S.C. § 3013.

### D. The Kinds of Sentence and the Sentencing Range Established For Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

The guideline for 18 U.S.C. § 1343 is USSG § 2B1.1(a)(1) which provides a base offense level of seven, since wire and commodities fraud is referenced to this guideline and the statutory maximum is twenty years or more. *See* USSG §§ 2B1.1(a)(1) (Nov. 2016). The instant offense involved a loss in excess of $550,000.00, Plea Agreement ¶ 2; therefore, pursuant to USSG § 2B1.1(b)(1)(H), cmt. n.3, fourteen levels are added. A two level upward adjustment applies because Defendant abused a position of trust in a manner that significantly facilitated the commission or concealment of the offense. USSG § 3B1.3. Defendant has demonstrated

acceptance of responsibility for the offense and notified the Government in a timely manner of his intention to enter a guilty plea. Accordingly, the offense level is decreased by three levels pursuant to USSG § 3E1.1(a) & (b). This brings Defendant's total offense level to twenty.

Defendant receives one criminal history point for his conviction for petit larceny and possession of a forged instrument. *See supra*; USSG §§ 4A1.1(c), 4A1.2(e)(2). This brings Defendant's criminal history category to I.

With a total offense level of twenty and a criminal history category of I, the Guidelines suggest a term of imprisonment of 33 to 41 months. USSG ch. 5, pt. A. The Guidelines further recommend a term of supervised release of between one and three years, *id.* § 5D1.2(a)(2); a fine of between $15,000 and $150,000, *id.* § 5E1.2(c)(3); payment of the costs of prosecution, *id.* § 5E1.5; and restitution, *id.* § 5E1.1. Defendant is ineligible for probation under the Guidelines. *See id.* § 5B1.1.

Probation recommends 33 months custody, an order of restitution in the amount of $1,085,013.24, due immediately and payable at a rate of $25 per quarter while in custody, and at a rate of 10% of gross monthly income while on supervised release, and two years supervised release with special conditions. Probation Sentencing Recommendation at 1, ECF No. 29-1.

The Plea Agreement mistakenly estimated Defendant's base level offense as six, which would have brought Defendant's adjusted total offense level to 19. *See* Plea Agreement ¶ 2. This would have yielded a Guidelines imprisonment range of 30 to 37 months. USSG ch. 5, pt. A. The Government now acknowledges that the base offense level estimated in the Plea Agreement was incorrect. Gov't Mem. at 3 n.1, ECF No. 32. However, the Government does not advocate for a Guidelines range beyond the originally estimated rage of 30 to 37 months. Notably, paragraph three of the Plea Agreement states,

7

> The Guidelines estimate set forth in paragraph 2 [of the Plea Agreement] is not binding on the Office, the Probation Department or the Court. If the Guidelines offense level advocated by the Office, or determined by the Probation Department or the Court, is, for any reason, including an error in the estimate, different from the estimate, the defendant will not be entitled to withdraw the plea and the government will not be deemed to have breached this agreement.

Defendant does not request a specific sentence, but rather asks the Court to impose a sentence outside and below the Guidelines range so as not to break Defendant's "familial bonds." Def. Mem. at 1, 6, ECF No. 33.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, which requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), does not apply.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In considering the other six § 3553(a) factors, the Court's sentence sufficiently avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Defendant agreed, pursuant to the Plea Agreement and Order of Restitution, to pay $1,085,013.24 in restitution. Plea Agreement ¶ 1; Order of Restitution at 4, ECF No. 20. This Court also previously entered a Forfeiture Money Judgment in the amount of $1,236,765.00, pursuant to the Plea Agreement. Plea Agreement ¶¶ 6-14; Final Order of Forfeiture, ECF No. 31.

## CONCLUSION

A sentence of 33 months of incarceration, 2 years of supervised release, an order of restitution in the amount of $1,085,013.24, the previously ordered Forfeiture Money Judgment in the amount of $1,236,765.00, and payment of the $100.00 mandatory assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but not greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

                                                  s/WFK
                                  HON. WILLIAM F. KUNTZ, II
                                  UNITED STATES DISTRICT JUDGE

Dated: July 30, 2018
       Brooklyn, New York